UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOREEN MAYNARD,                    :
                                  :
     Plaintiff,                   :
                                  :
v.                                :     Case No. 3:15-CV-483 (RNC)
                                  :
STONINGTON COMMUNITY CENTER,      :
                                  :
     Defendant.                   :

RULING AND ORDER

Plaintiff Doreen Maynard brings this action pro se against
her former employer, the Stonington Community Center ("COMO"),
alleging discrimination and retaliation in violation of Title
VII, the Age Discrimination in Employment Act ("ADEA"), and the
Connecticut Fair Employment Practices Act ("CFEPA").  Both
parties move for summary judgment (ECF Nos. 115, 120) and
plaintiff moves to strike an affidavit defendant filed in support
of its motion for summary judgment (ECF No. 116).  For reasons
that follow, plaintiff's motions are denied and defendant's
motion is granted.

I. Background

The parties' submissions show the following.  In September
2010, defendant hired plaintiff, a female, as an Assistant
Teacher for a before-and-after-school program at Dean's Mill
Elementary School ("DMES").  Suzanne Cutler, also female,
personally hired and supervised plaintiff.  Cutler also
supervised plaintiff's three male co-workers: Bryan Primett,
Scott Algiers, and Alex Walker.  Walker was Head Teacher and

Primett and Algiers held the same position as plaintiff.  At the
relevant time, Cutler was sixty-five, plaintiff was fifty-nine,
and plaintiff's three male co-workers were under forty.

A few weeks into the job, while plaintiff was being trained,
she complained to Cutler that Primett had called her names.  On
one occasion, he allegedly stated, "You think you can remember
that, granny?"  According to plaintiff, Cutler did nothing in
response to the complaints.  She said plaintiff could not be too
"thin skinned" at the "immature . . . boys club" over at DMES.
According to defendant, Cutler did tell Primett to stop calling
plaintiff names and followed up with other teachers.  It is
undisputed that Cutler did not conduct a formal investigation.

Throughout the fall of 2010, plaintiff continued to complain
about Primett.  She reported that students heard the name-calling
and had complained to her about it.  Plaintiff encouraged one
student, an eight-year old boy, to write down what Primett had
said.[1]  According to defendant, the boy's father, Jay, asked
plaintiff to stop talking to the boy about her issues with
Primett.  Cutler also instructed plaintiff to stop talking to the
boy about Primett.  Plaintiff disputes that these conversations
with Jay and Cutler took place.  According to plaintiff, nothing
about her conversations with the student was inappropriate; she

_____

[1] The letter states that Primett pointed to plaintiff and
"called her bad names like weird, loser, freaky and dumb."

had simply listened to the student's unsolicited complaints about Primett and asked the student to write them down.

From December 2010 to February 2011, plaintiff reported to Cutler several incidents of alleged child abuse by Primett and Algiers. She also notified DMES faculty and the Connecticut Department of Children and Families ("DCF"), believing she was required to do so as a mandated reporter. According to plaintiff, in addition to witnessing several incidents herself, she heard from students and parents about incidents of abuse. On one occasion in January, Primett allegedly kicked a student in the gym. Algiers scolded the student for whining. Plaintiff listened to the student's complaints about the incident and advised the student to tell his parents. Primett and Algiers complained to Cutler about plaintiff's handling of the situation. Cutler determined that the abuse allegation was false and called the student's mother to tell her it was an "accident." Cutler then allegedly forbade plaintiff from telling parents or others about Primett's alleged abuses. Despite this instruction, plaintiff continued to notify the appropriate persons and organizations when she observed what she believed was child abuse.

At some point, Cutler separated plaintiff and Primett for most of the forty-five minute before-school program. From 8:00 a.m. to 8:30 a.m., Primett supervised students playing sports in

the gym and plaintiff supervised students doing crafts in a different area. They still interacted from 8:30 a.m. to 8:45 a.m., when the bell would ring and the students would go to their classes. According to defendant, Cutler separated the two because of the apparent tension between plaintiff and Primett, and because plaintiff had raised concerns that not all students participated in sports. According to plaintiff, Cutler separated the two solely because some students complained of abuse by Primett.

In mid-February, plaintiff allegedly witnessed Primett physically and verbally abuse Jay's eight-year old son, the same boy who had written the letter detailing Primett's name-calling. Plaintiff reported the abuse to Jay, Cutler, DMES faculty, and DCF. On February 15, Cutler spoke to Jay via telephone.[2] According to defendant, Jay complained that plaintiff had continued to have inappropriate discussions with his son about her issues with Primett. According to plaintiff, Cutler called Jay and, at the behest of Primett, Algiers, and Walker, "incited" him to file a formal complaint. Jay had "no problem" with plaintiff prior to this phone call.

On February 16, Jay encountered plaintiff at DMES. According to defendant, they had a verbal disagreement. Later,

---

[2] The parties dispute whether Cutler or Jay initiated the call.

4

plaintiff had an "outburst" while speaking to Walker in front of students, parents, and staff. Plaintiff disputes this account. Jay "harassed" her and stated that he did not want her to involve his son in adult issues at COMO. She denied his accusations and told him about Primett's alleged abuse of his son. He said it must not have bothered his son because he had never mentioned it and there were no secrets between them. Plaintiff also contends that no "outburst" occurred in front of students, parents, and staff.

Later on February 16, plaintiff called Cutler to complain about being "harassed" by Jay and her male coworkers. She requested a meeting with all involved, but Cutler declined.[3] Cutler told her not to come to work the next day because she was too "upset." After the call, plaintiff emailed James Truscio, COMO's executive director, whom she had never met.[4] She outlined her grievances and asked for a meeting. She also stated that she planned to report to work unless he said otherwise because she did not want to lose pay and believed Cutler's instruction was "retaliatory." Truscio did not respond to the email.

The next day, February 17, plaintiff arrived at DMES at 7:00 a.m. Plaintiff contends that she went to DMES to obtain job

---

[3] Cutler later asked her to attend an "impromptu disciplinary meeting" later in the day, but plaintiff refused to attend.

[4] At the relevant time, Truscio was sixty-two (62).

reference letters from parents.[5]  Later in the day, Truscio held

a meeting with plaintiff and Cutler.  Truscio stated that the

purpose of the meeting was to investigate complaints against

plaintiff regarding the events of the previous day and her

conversations with Jay's son.  He told her that her job was in

jeopardy.  Plaintiff complained that she had requested relief

from Primett's "bad mouthing" but never received it.  She also

complained about how they were handling the allegations against

her, in particular, that they denied her requested meeting with

everyone involved.  She threatened legal action if Truscio

decided to discipline or terminate her.  Truscio told her she

would be paid for the rest of the week but that she should not

come into work.  The COMO program did not operate for the

following two weeks due to DMES's winter break.

On February 28, Truscio held another meeting with plaintiff

and Cutler.[6]  He said that he had looked into the issues

discussed in the February 17 meeting and decided to terminate

plaintiff's employment.  He handed her a letter providing four

---

[5] On February 28, during her termination meeting, plaintiff
stated that she had reported to work on February 17 because
Cutler's instruction was a "retaliatory directive and [she] was
not bound to abide by it." At other times, plaintiff has stated
that she was at DMES to perform her other, unrelated job there.
(She worked in the library as a volunteer from 9:00 a.m. to 11:00
a.m. and under contract from 11:00 a.m. to 1:00 p.m.)

[6] Plaintiff brought a witness, who recorded the meeting. The
recording was subsequently transcribed.

reasons for her termination: (1) "Insubordination," based on plaintiff's reporting to work on February 17 despite Cutler's instructions; (2) "Unprofessional behavior," based on her alleged "outburst" in front of students and staff; (3) "Serious lack of judgment," based on her discussions with the eight-year old student about Primett's name-calling; and (4) "Willful refusal to follow directions," based on her continued discussions with the student despite Cutler's instructions.

Plaintiff disputed each of the allegations and asked for proof. When Truscio failed to produce witnesses or documentation, plaintiff stated that he needed to support his findings with "competent evidence" and could not rely on "hearsay." At various times, Truscio and Cutler stated that plaintiff was an at-will employee and they were not required to produce this kind of proof.

Plaintiff accused them of violating state and federal labor laws by following up on her male coworkers' complaints against her but not her complaints against them. She read passages from the COMO employee handbook regarding workplace discrimination. She complained that she did not receive a meeting regarding her complaints that Cutler, Primett, Jay, and others had harassed her.

After the meeting, plaintiff's position was given to a woman in her twenties. She continued to work at DMES, where she was

employed as a librarian, but eventually requested and received a transfer to the district's high school because of her toxic relationship with Primett.

On May 12, 2011, plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), claiming that COMO discriminated against her based on her age and gender. After an investigation and factfinding proceeding, the CHRO determined in November 2013 that there was no reasonable cause to believe COMO discriminated against her. The CHRO found that most of plaintiff's claims were unsubstantiated or refuted by the evidence, which included a signed statement by a DMES cafeteria worker confirming that plaintiff had an "outburst" in front of students and staff on February 16. Plaintiff then brought this suit.[7]

## II. Plaintiff's Motion to Strike

Plaintiff moves to strike Cutler's affidavit. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A court may strike an affidavit, or portions of an affidavit, that

---

[7] As another court recently noted, plaintiff's claims here are similar to claims she has brought against several other employers in the past. Maynard v. St. Stephen's Reformed Episcopal Church, 2017 WL 2865014, at *11 (D. Md. July 5, 2017) (citing cases from 2001, 2008, and 2013).

does not comply with Rule 56.  See Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999).  None of plaintiff's arguments require the Court to strike Cutler's affidavit.[8]

Plaintiff argues that Cutler's affidavit has "technical deficiencies."  But the affidavit was "[s]ubscribed and sworn" before a notary public, Def. Ex. A. (ECF No. 115-3), which meets the requirements of Rule 56, see Lamoureux v. AnazaoHealth Corp., No. 3:03CV01382 WIG, 2010 WL 3801611, at *1 (D. Conn. Sept. 22, 2010) ("To be admissible in a summary judgment proceeding, an affidavit must be sworn to before an officer authorized to administer oaths, such as a notary public." (citing Pheil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985)).  The cases cited by plaintiff are inapposite.[9]

Plaintiff argues that portions of the affidavit are inadmissible hearsay and that Cutler lacks personal knowledge of its contents.  In particular, plaintiff challenges portions of the affidavit that recount what Cutler heard from third parties about plaintiff's conduct during her time at COMO.  While it is

_____

[8] As explained more fully below, the standard of review on defendant's motion for summary judgment requires me to view the evidence in the light most favorable to plaintiff.  Thus, to the extent Cutler's affidavit contradicts other evidence presented by plaintiff, I assume plaintiff's version is true.

[9] See Orsi v. Kirkwood, 999 F.2d 86, 91 (4th Cir. 1993) (striking unsworn, unauthenticated document submitted on day of summary judgment hearing); Nissho-Iwai American Corp. V. Kline, 845 F.2d 1300, 1305-06 (5th Cir. 1988) (striking affidavit that was neither sworn nor submitted under penalty of perjury).

true that statements made by third parties regarding plaintiff's conduct could constitute inadmissible hearsay if offered to prove that the misconduct occurred, see Fed. R. Evid. 801(c), defendant has not used the statements for that purpose. As explained more fully below, the issue pertinent to plaintiff's discrimination and retaliation claims is whether defendant had a "good faith belief that an employee engaged in misconduct," not whether plaintiff actually engaged in misconduct. Marini v. Costco Wholesale Corp., 64 F. Supp. 3d 317, 334 (D. Conn. 2014) (quoting Weisbecker v. Sayville Union Free Sch. Dist., 890 F. Supp. 2d 215, 238 (E.D.N.Y. 2012)). Cutler has personal knowledge of what others told her, and the reports she received from others are relevant to whether she had a good faith belief that plaintiff had engaged in misconduct. Because the reports are not offered for their truth, they are not hearsay.

Plaintiff argues that Cutler's affidavit is a "sham" because it is contrary to other evidence. The inconsistencies identified by plaintiff do not evince an "attempt to conjure up a triable issue of fact through the proffer of a [false] affidavit" See Margo v. Weiss, 213 F.3d 55, 61 (2d Cir. 2000). The affidavit does not recant prior testimony by Cutler or even contradict prior statements made by Cutler. Most of the inconsistencies are based on minor variations between the affidavit, defendant's other submissions, and findings by the CHRO, which did not

interview Cutler. In addition, I do not find that Cutler's failure to mention the first reason initially given for plaintiff's discharge (that plaintiff came to work on February 17, 2011, contrary to Cutler's instructions) renders the affidavit a sham. That Cutler failed to mention this reason may indicate that Cutler considered the other reasons more important, but it does not cast doubt on the affidavit.

Plaintiff argues that Cutler's resignation from COMO shortly after the underlying events renders her incompetent to testify. Although Cutler's allegedly sudden departure may weigh on the issues presented in plaintiff's case, it does not render her incompetent to testify.[10]

Plaintiff also objects to the defendant's reliance on other documentary evidence, in particular, a statistical chart showing that COMO's workforce was approximately 70 percent female. See Def. Ex. D (ECF No. 115-6). She argues that the chart is irrelevant because, at least at the DMES location, she was the only female. I find that the chart would likely be inadmissible at trial because defendant provides none of the underlying data, no evidence explaining how it was produced, and no witness to affirm its authenticity. See Fed. R. Evid. 901 (describing requirements for authenticating evidence). Accordingly, I

_____

[10] Plaintiff makes other arguments in support of her position that the affidavit should be disregarded but they concern the merits of her claims and are addressed accordingly.

disregard the chart.

III. <u>Motions for Summary Judgment</u>

Both parties move for summary judgment on plaintiff's discrimination and retaliation claims. Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). To avoid summary judgment, the non-moving party must point to evidence that would permit a jury to return a verdict in his or her favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). In determining whether this standard is met, the evidence must be viewed in the light most favorable to the non-moving party. <u>Id.</u> at 255.

A. <u>Discrimination Claim</u>

Plaintiff claims that she was unlawfully terminated based on her age and sex. Discrimination claims under Title VII, the ADEA, and the CFEPA are analyzed under the burden-shifting framework originally set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164, 168 (2d Cir. 2001); <u>Craine v. Trinity College</u>, 259 Conn. 625, 636-37 (2002).[11] First, plaintiff must meet the

---

[11] Title VII and the ADEA make it unlawful for an employer to discharge an employee "because of" the employee's sex or age, respectively. <u>See</u> 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1). The CFEPA prohibits both sex and age discrimination. <u>See</u> Conn. Gen. Stat. § 46a-60(b)(1).

"minimal" burden of establishing a prima facie case by showing that: "(i) at the relevant time [she] was a member of the protected class; (ii) [she] was qualified for the job; (iii) [she] suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Roge, 257 F.3d at 168 (citation omitted). If the plaintiff establishes a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. Id. If the defendant meets this burden, the presumption of discrimination "drops out," and the burden shifts back to the plaintiff to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)).

Defendant does not dispute the first three elements of plaintiff's prima facie case. But it disputes that the circumstances surrounding plaintiff's discharge give rise to an inference of unlawful discrimination on the basis of age or sex. I conclude that plaintiff has met her burden on this element of a prima facie case.

Several different circumstances may raise an inference of discrimination. See Littlejohn v. City of New York, 795 F.3d

297, 312-13 (2d Cir. 2015) (discussing various circumstances). One such circumstance is "when an employer replaces a terminated . . . employee with an individual outside the employee's protected class." Id. at 312. Here, plaintiff was replaced by a woman in her twenties, which is sufficient to raise an inference of age discrimination.

An inference of discrimination also can be supported by evidence that the plaintiff was treated "less favorably than a similarly situated employee outside [her] protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). The other employee must be "similarly situated in all material respects." Id. at 40 (citing Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)). Whether employees were similarly situated ordinarily is a question of fact that depends on "(1) whether [they] were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." Id. (citations omitted). Both plaintiff and Primett were Assistant Teachers employed by COMO and supervised by Cutler. A reasonable jury could find they were similarly situated. See Brown v. Daikin America Inc., 756 F.3d 219, 230 (2d Cir. 2014) (concluding that persons employed by parent company and subsidiary with same supervisor may be similarly situated). According to plaintiff, she complained to Cutler that Primett called her "granny" and

physically abused several children.  Cutler either did nothing or
conducted only cursory investigations of plaintiff's complaints,
contrary to COMO's written policies.  In contrast, when plaintiff
was accused of having inappropriate conversations with a student,
Cutler notified Executive Director Truscio and conducted an
investigation that ultimately led to plaintiff's termination.
These circumstances give rise to an inference of discrimination
sufficient to meet plaintiff's burden.

In response to plaintiff's prima facie case, defendant
offers the four reasons for her discharge that were set forth in
the letter she received from Truscio at the meeting on February
28.  In rebuttal, plaintiff disputes the facts underlying all
four reasons.  Based on the parties' submissions, there are
disputes of fact regarding (1) why plaintiff was present at DMES
at 7:00 a.m. on February 17, 2011; (2) whether plaintiff had an
"outburst" in front of students and staff on February 16, 2011;
(3) the nature of plaintiff's discussions with the eight-year old
boy about plaintiff's issues with Primett; and (4) whether
plaintiff was instructed to stop talking to the eight-year old
boy about Primett.

Assuming plaintiff's version of these events is true, she
has not shown that defendant's stated reasons for the discharge
are a cover-up for unlawful discrimination.  As long as an
employer has a "good faith belief that an employee engaged in

misconduct," "the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination." Marini, 64 F. Supp. 3d at 334 (quoting Weisbecker, 890 F. Supp. 2d at 238)). Here, there is no dispute that (1) plaintiff arrived at DMES in time for the morning COMO program on February 17, 2011, after telling Truscio via email that she planned to report to work despite Cutler's instructions; (2) it was reported to Cutler that plaintiff had an "outburst" in front of students and staff,[12] which was later corroborated by at least one witness; and (3) in the midst of an ongoing workplace dispute with Primett, plaintiff asked an eight-year old student to write down alleged misconduct by Primett.

In light of these undisputed facts, Cutler and Truscio could make a good faith determination that plaintiff engaged in the misconduct underlying the four reasons given for her discharge. Cf. Ungerleider v. Fleet Mortg. Grp. Of Fleet Bank, 329 F. Supp. 2d 343, 357 (D. Conn. 2004) (finding that record supported employer's proffered reasons for discharge where supervisors had documented deficiencies in employee's judgment and professionalism, employee was insubordinate and had confrontations with co-workers, and supervisors had received complaints from customers). Plaintiff offers no evidence showing

---

[12] Although it is not clear from the parties' filings who reported the alleged "outburst," plaintiff has not disputed that such a report was made.

that Cutler or Truscio knew or should have known the allegations against her were false, other than her own denials at the time and now. Cf. Kelly, 971 F. Supp. 2d at 249-51 (finding employer's reasons were not pretextual where negative performance review was supported by some undisputed evidence, despite other evidence that could support positive review and plaintiff's claim that reviews were "fabricated").

Moreover, plaintiff fails to show that Cutler or Truscio were actually motivated by discrimination based on age or gender. Plaintiff relies primarily on allegations that Primett once called her "granny" and Cutler responded by saying plaintiff could not be too "thin skinned" at the "boy's club" at DMES. In general, "stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination." Danzer v. Norden Sys., Inc., 151 F.3d 50, 56 (2d Cir. 1998). "The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative the remark will be." Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007). Primett's and Cutler's statements occurred several weeks after plaintiff's start date in September 2010. She was discharged in February 2011. Given this lapse in time, the remarks have little probative value. In addition, the remarks were apparently isolated and unrelated to the issues that

ultimately led to plaintiff's discharge.  These circumstances do
not support a finding of unlawful discrimination.  See Dixon v.
Int'l Fed'n Of Accountants, 416 F. App'x 107, 110 (2d Cir. 2011)
(dismissing case where plaintiff's "entire employment
discrimination claim is predicated on an isolated derogatory
remark made by [co-worker], who played no role in [plaintiff]'s
termination").

     Viewing the record as a whole, it does not permit a finding
of age discrimination.  Though plaintiff was replaced by someone
significantly younger, that fact, standing alone, is not
sufficient to show pretext.  Cf. de la Cruz v. New York City
Human Resources Admin. Dept. Of Social Servs., 82 F.3d 16, 21-22
(2d Cir. 1996) (finding no pretext where prima facie case
supported by fact that Puerto Rican male plaintiff was replaced
by black female).  And other undisputed facts weigh heavily
against a finding of discrimination on the basis of age.  Cutler
hired plaintiff less than a year prior to discharging her, making
it "difficult to impute to her an invidious motivation." Grady
v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997); see
also Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000) (fact
that plaintiff was fired by same person who hired him is "highly
relevant in adjudicating a motion for summary judgment on an ADEA
claim"). In addition, both Cutler and Truscio were older than
plaintiff, further weakening an inference of discrimination.  See

18

<u>Moore v. Kingsbrook Jewish Med. Ctr.</u>, 2013 WL 3968748, at *11
(E.D.N.Y. July 30, 2013) (collecting cases recognizing that
"allegation that a decision is motivated by [discriminatory]
animus is weakened when the decisionmakers are members of the
[same] protected class as the plaintiff").

Nor does the record support a finding of sex discrimination.
Though a jury could find that Cutler treated plaintiff
differently from her male coworker Primett, plaintiff has
produced no evidence that Cutler did so because plaintiff is a
woman.  Cutler is also a woman and was involved in plaintiff's
hiring shortly before plaintiff was discharged, weakening any
inference that plaintiff was discharged because of her sex.  <u>See</u>
<u>Grady</u>, 130 F.3d at 560; <u>Moore</u>, 2013 WL 3968748, at *11.  In
addition, COMO hired a woman to replace plaintiff, further
weakening such an inference.  <u>See</u> <u>Aiello v. Stamford Hosp.</u>, No.
3:09-cv-1161 (VLB), 2011 WL 3439459, at *17 (D. Conn. Aug. 8,
2011) (finding fact that employer hired member of same protected
class undermines inference of discrimination), <u>aff'd</u>, 487 F.
App'x 677 (2d Cir. 2012).

B. <u>Retaliation Claim</u>

Plaintiff claims that she was discharged in retaliation for
engaging in protected activity.  Retaliation claims under Title
VII, the ADEA, and the CFEPA are analyzed under the same burden-

shifting framework described above.[13]  To establish a prima facie

case, plaintiff must show "(1) participation in a protected

activity; (2) that the defendant knew of the protected activity;

(3) an adverse employment action; and (4) a causal connection

between the protected activity and the adverse employment

action." Littlejohn, 795 F.3d at 316 (quotations omitted).  If

the plaintiff makes this showing, the burden shifts to the

defendant to articulate a legitimate, non-retaliatory reason for

the adverse employment action. Ya-Chen Chen v. City Univ. Of New

York, 805 F.3d 59, 70 (2d Cir. 2015).  If the defendant meets

this burden, the burden shifts back to the plaintiff to prove

"that the desire to retaliate was the but-for cause of the

challenged employment action." Id. (citing Nassar, 133 S.Ct. at

2528).

       Defendant argues that plaintiff has not shown the first,

second, and fourth elements of her prima facie case.  I disagree.

Protected activity includes "any activity designed to 'resist or

antagonize . . .; to contend against; to confront; . . . [or]

withstand' discrimination prohibited by" Title VII, the ADEA, or

the CFEPA. Littlejohn, 795 F.3d at 317 (quoting Crawford v.

Metro. Gov't of Nashville & Davison Cty., 555 U.S. 271, 276

_____

        [13] Title VII, the ADEA, and the CFEPA make it unlawful for
an employer to discriminate against an employee who has "opposed
any practice" the statutes prohibit. 29 U.S.C. § 623(d); 42
U.S.C. § 2000e-3(a); Conn. Gen. Stat. § 46a-60(b)(4).

(2009)). This includes "informal protests of discriminatory employment practices, including making complaints to management." Id. (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d. Cir. 1990)). To be protected activity, the plaintiff must have "possessed a good faith, reasonable belief that the underlying employment practice was unlawful." Galdieri-Ambrosini v. Nat'l Realty & Development Corp., 136 F.3 276, 292 (2d Cir. 1998).

A jury could find that two of plaintiff's complaints to Cutler and Truscio were protected activity with a causal connection to the discharge. Several weeks after she started working at COMO, she complained to Cutler about Primett calling her "granny." This complaint could constitute opposition to age-based harassment.[14] On February 17, plaintiff complained to Cutler and Truscio that she had previously lodged complaints about Primett's "bad mouthing" but received no relief. Charitably construed, this could be interpreted as a renewed complaint about Primett's age-based harassment. The short time period between this complaint and plaintiff's discharge on February 28 is sufficient to establish a causal connection, at

---

[14] Plaintiff refers to "harassment" and a "hostile work environment" throughout her submissions. But, as noted in the Court's ruling on defendant's motion to dismiss, plaintiff's claims are based solely on her discharge. See Order (ECF No. 110) at 4 n.1. In addition, plaintiff contends that Primett called her names throughout the fall of 2010, but the only names identified in the record are "weird, loser, freaky and dumb." None of these complaints could reasonably be understood to constitute opposition to unlawful discriminatory conduct.

least at the prima facie stage.  See Abrams v. Dep't of Public Safety, 764 F.3d 244, 254 (2d Cir. 2014) (suggesting that five month period between protected activity and discharge is sufficient to meet prima facie burden).[15]

However, plaintiff has not met her burden of establishing that defendant's legitimate, non-retaliatory reasons for her discharge are a pretext masking unlawful retaliation.  As discussed above, defendant offers four reasons for plaintiff's discharge, and plaintiff has failed to show that the reasons are not made in good faith.  With respect to her retaliation claim, the temporal proximity between her protected activity and

---

[15] Plaintiff's other complaints to management did not constitute protected activity.  Her complaints regarding Primett's alleged child abuse could not reasonably be understood as opposition to unlawful discrimination.  On February 16 and 17, 2011, plaintiff complained to Cutler and Truscio that she had been "harassed" by Jay and her coworkers.  Despite plaintiff's use of the term "harassed," the complaints did not constitute protected activity.  By her own account, the alleged "harassment" involved confrontations regarding her conversations with Jay's son about Primett that had nothing to do with plaintiff's age or sex.  Thus, the complaints could not reasonably be understood to be opposition to age- or sex-based harassment. Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., 716 F.3d 10, 17 (2d Cir. 2013) ("Although particular words such as 'discrimination' are certainly not required to put an employer on notice of a protected complaint, neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."). The mere fact that the alleged "harassers" were young men does not alter this conclusion. Cf. Drumm v. Suny Geneseo College, 486 F. App'x 912, 914 (2d Cir. 2012) ("[P]laintiff's allegations that her [male] supervisor 'berated' her and made other harsh comments . . . amount only to general allegations of mistreatment . . . .").

discharge, standing alone, is insufficient to establish that defendant's reasons are pretextual. <u>See</u> <u>id.</u> And plaintiff offers scant other evidence of pretext. Her principal contention appears to be that, during the following exchange at the meeting on February 28, Truscio "admitted" that her discharge was retaliatory:

> MS. MAYNARD: . . . [I]nstead of giving me that meeting or responding to my report and request for that, [Cutler] turned around and tried to tell me not to report to work because of my behavior. She retaliated.
> MR. TRUSCIO: She has a right to do that. We are your employer.
> MS. MAYNARD: She doesn't have a right. That's retaliation.
> MR. TRUSCIO: We are your – we are your employer. We have a responsibility and we have a right to say to you, 'do not report to work the next day.' That is our choice. That is our decision.

No rational juror could read Truscio's statements during this exchange as an "admission" that his or Cutler's actions were in retaliation for plaintiff's protected activity. Truscio stated that, as plaintiff's employer, COMO had a right to tell her not to report to work. Though plaintiff made it known that she believed Cutler's action was retaliatory, Truscio did not admit that it was.

III. <u>Conclusion</u>

For the foregoing reasons, defendant's motion for summary judgment (ECF No. 115) is granted and plaintiff's motions (ECF No. 116, 120) are denied.

So ordered this 31st day of March 2018.

_____
            /s/
     Robert N. Chatigny
 United States District Judge
